1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

9  JUSTIN MICHAEL BROWN,

10      Plaintiff,

11

12      v.

13  CAROLYN W. COLVIN,

14  Commissioner of Social Security,

15      Defendant.

16

No. CV-12-0513-JTR

ORDER GRANTING
DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT

17      **BEFORE THE COURT** are cross-Motions for Summary Judgment.  ECF

18  No. 15, 17.  Attorney Maureen J. Rosette represents Justin Michael Brown

19  (Plaintiff); Special Assistant United States Attorney Franco L. Becia represents the

20  Commissioner of Social Security (Defendant).  The parties have consented to

21  proceed before a magistrate judge.  ECF No. 6.  After reviewing the administrative

22  record and briefs filed by the parties, the Court **GRANTS** Defendant's Motion for

23  Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

24                              **JURISDICTION**

25      Plaintiff filed an application for Supplemental Security Income (SSI)

26  benefits on February 24, 2010, alleging disability since March 1, 2006, due to

27  ADD/ADHD, depression and bipolar condition.  Tr. 111, 129.  The application was

28  denied initially and upon reconsideration.  Administrative Law Judge (ALJ) Marie

Palachuk held a hearing on July 26, 2011, Tr. 30-71, and issued an unfavorable decision on September 12, 2011, Tr. 12-25.  The Appeals Council denied review on June 25, 2012.  Tr. 1-6.  The ALJ's September 2011 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial review on August 20, 2012.  ECF No. 1, 5.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties.  They are only briefly summarized here.

Plaintiff was born on March 7, 1988, and was 21 years old on the date of the application, February 24, 2010.  Tr. 124.  Plaintiff indicated he completed school through the eighth grade, Tr. 130, and was attempting to take classes to obtain a GED at the time of the administrative hearing, Tr. 51.

Plaintiff last worked at McDonalds in April 2009 and stopped working after about a month.  Tr. 52, 129.  He stated he quit showing up for work because he was supposed to be on the grill for a two-week period and then move up on the scale, but he had not been moved up.  Tr. 52.  Plaintiff indicated the main issue preventing him from being able to work is mood swings.  Tr. 56.

Plaintiff testified depression makes him not want to get out of bed in the morning and not want to be around people.  Tr. 53.  He indicated he just likes to lie in bed and do nothing.  Tr. 53.  Plaintiff stated it was also difficult to socialize.  Tr. 54.  He indicated he has daily mood swings and has verbal fights multiple times a week with his grandparents.  Tr. 55.  Plaintiff testified he also has trouble with sleep and, as a result, felt fatigued during the day.  Tr. 56.  Plaintiff stated he used to like to watch TV, play video games and ride his dirt bike during the day, but, for reasons he was unable to articulate at the administrative hearing, he no longer enjoys those activities.  Tr. 58.

Plaintiff's grandfather, Roger Durheim, also testified at the administrative hearing. Tr. 60-65. Mr. Durheim indicated that Plaintiff previously had issues with drugs and alcohol, but Plaintiff went to substance abuse treatment and had since been clean. Tr. 61. He stated that since Plaintiff had undergone treatment, there had no longer been any issues with Plaintiff's anger and frustration. Tr. 61, 63-64. Mr. Durheim indicated that Plaintiff's medication was now "absolutely" working. Tr. 64. He stated "there's no question in my mind the amount of progress that [Plaintiff] has made and we've seen in him." Tr. 64.

Joseph Cools, Ph.D., testified as a medical expert at the administrative hearing. Tr. 38-48. Dr. Cools indicated that when Plaintiff began the recovery process at the substance abuse center in 2011, Plaintiff's health status improved dramatically. Tr. 42. Plaintiff became more active; regained stress management skills; and was once again enjoying spending time with his son, being active on his dirt bike, visiting his family and going to self-help groups. Tr. 42. Dr. Cools noted that when Plaintiff was off alcohol and drugs, Plaintiff's mental status improved with very little medication. Tr. 45-46. Dr. Cools also indicated Plaintiff did not have relationship problems other than those generated by his usage of drugs and alcohol. Tr. 47.

## STANDARD OF REVIEW

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the Court set out the standard of review:

A district court's order upholding the Commissioner's denial of benefits is reviewed de novo. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000). The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed de novo, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett,* 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence exists to support the administrative findings, or if conflicting evidence exists that will support a finding of either disability or non-disability, the Commissioner's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This

ORDER GRANTING DEFENDANT'S MOTION . . . - 4

burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform.  *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004).  If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made.  20 C.F.R. §§ 404.1520(a)(4)(i-v), 416.920(a)(4)(i-v).

## DAA ANALYSIS

An otherwise disabled individual is not entitled to disability benefits under the Social Security Act if drug addiction and/or alcoholism (DAA) is a contributing factor material to disability.  The Contract With America Advancement Act of 1996, Pub. L. No. 104-121 § 105(a)(C), amended the definition of disability under the Social Security Act to prohibit entitlement to disability benefits under Titles II and XVI for any individual whose disability is based on DAA.  Title II of the Social Security Act now states:  "An individual shall not be considered to be disabled for purposes of this title if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled."  42 U.S.C. § 423(d)(2)(c).  Title XVI of the Social Security Act contains a similarly worded provision for purposes of determining eligibility for SSI disability benefits.  42 U.S.C. § 1382c(a)(30)(J).

The Commissioner's disability regulations likewise state, "if we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability."  20 C.F.R. § 416.935(a).  Specifically, the "key factor" the Commissioner "will examine in determining

ORDER GRANTING DEFENDANT'S MOTION . . . - 5

whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol." 20 C.F.R. § 416.935(b). "If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability." *Id*.

If the ALJ finds the claimant disabled and there is medical evidence of DAA, the ALJ must determine the materiality of the claimant's DAA to his disability. The ALJ must perform the sequential evaluation process a second time, separating out the impact of the claimant's DAA, to determine if he would still be found disabled if he stopped using drugs or alcohol. *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001). The claimant bears the burden of proving that DAA is not a contributing factor material to his disability. *Parra v. Astrue*, 481 F.3d 742, 744-745, 748 (9th Cir. 2007).

## ADMINISTRATIVE DECISION

The ALJ found that Plaintiff had not engaged in substantial gainful activity since February 24, 2010, the application date. Tr. 14. The ALJ determined, at step two, that Plaintiff had severe impairments of polysubstance dependence and depression. Tr. 14. At step three, the ALJ found Plaintiff's mental impairments, including the substance use disorder, met Sections 12.04 and 12.09 of the listed impairments. Tr. 16. However, the ALJ then assessed Plaintiff's impairments if he stopped the substance use and determined that his impairments, alone and in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R., Appendix 1, Subpart P, Regulations No. 4. Tr. 17.

The ALJ assessed Plaintiff's RFC if he stopped the substance use and concluded Plaintiff could perform a full range of work at all exertional levels, but with the following nonexertional limitations: he is capable of only occasional interaction with the general public and his concentration, persistence and pace are

average.  Tr. 19.  The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to produce his alleged symptoms but that Plaintiff's subjective complaints and alleged limitations were not fully credible.  Tr. 19-24. At step four, the ALJ found that if Plaintiff stopped the substance use, he would be able to perform his past relevant work as a stock selector and groundskeeper.  Tr. 24.  Alternatively, the ALJ indicated that, considering Plaintiff's age, education, work experience and RFC in conjunction with the Medical-Vocational Guidelines, there were other jobs existing in significant numbers in the national economy that Plaintiff could perform.  Tr. 24-25.  The ALJ thus determined that Plaintiff was not under a disability within the meaning of the Social Security Act at any time through the date of her decision, September 12, 2011.  Tr. 25.  The ALJ indicated that since she found that Plaintiff would not be disabled if he stopped the substance use, Plaintiff's substance use disorder was a contributing factor material to the determination of disability.  Tr. 25.

## ISSUES

The question presented is whether substantial evidence exists to support the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.  Plaintiff contends he is more limited from a psychological standpoint than what was determined by the ALJ.  ECF No. 15 at 9-16.  Plaintiff specifically argues the ALJ erred by failing to properly consider the opinions of certain treating and examining medical sources and instead relying on the opinions of a non-treating, non-examining medical professional when determining Plaintiff's mental RFC.  *Id.*

## DISCUSSION

**A.   Plaintiff's Credibility**

While Plaintiff has not challenged the ALJ's finding that Plaintiff is not fully credible, Tr. 19, the undersigned finds the ALJ's credibility determination significant in this case.

The ALJ indicated several reasons why Plaintiff was not entirely credible: objective evaluations contradicted the impairments Plaintiff reported, multiple medical providers found evidence of symptom exaggeration, some of Plaintiff's symptoms were caused by substance abuse and Plaintiff did not always disclose his substance abuse to medical providers, Plaintiff's activities were inconsistent with the degree of limitation alleged, and Plaintiff improved with treatment after he stopped using substances. Tr. 19-20. These reasons are fully supported by the record, and the ALJ's determination that Plaintiff's statements were not fully credible is uncontested by Plaintiff. *See Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1164 (9th Cir. 2003) (issues not specifically and distinctly contested in a party's opening brief are considered waived). Since Plaintiff was properly found by the ALJ to be not entirely credible, the ALJ appropriately accorded little weight to medical reports based primarily on Plaintiff's subjective complaints. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (a physician's opinion premised primarily on a claimant's subjective complaints may be discounted where the record supports the ALJ's discounting of the claimant's credibility); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (the opinion of a physician premised to a large extent on a claimant's own account of symptoms and limitations may be disregarded where they have been properly discounted).

**B.    Mental Limitations**

Plaintiff argues that limitations assessed by Bill Gibson, ARNP, Ph.D., Douglas Lane, Ph.D., and William Greene, Ph.D., reflect greater restrictions from a psychological standpoint than assessed by the ALJ, and the ALJ erred by not according these medical professionals greater weight. ECF No. 14 at 9-16. Plaintiff contends the ALJ erred by instead according significant weight to the opinions of the medical expert, Joseph Cools, Ph.D., when assessing Plaintiff's mental limitations. *Id.*

ORDER GRANTING DEFENDANT'S MOTION . . . - 8

In a disability proceeding, the courts distinguish among the opinions of three types of physicians:  treating physicians, physicians who examine but do not treat the claimant (examining physicians) and those who neither examine nor treat the claimant (nonexamining physicians).  *Lester v. Chater*, 81 F.3d 821, 839 (9th Cir. 1996).  The Ninth Circuit has held that "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."  *Lester*, 81 F.3d at 830.  Rather, an ALJ's decision to reject the opinion of a treating or examining physician, may be based in part on the testimony of a nonexamining medical advisor.  *Magallanes*, 881 F.2d at 751-55; *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).  The ALJ must also have other evidence to support the decision such as laboratory test results, contrary reports from examining physicians, and testimony from the claimant that was inconsistent with the physician's opinion.  *Magallanes*, 881 F.2d at 751-52; *Andrews*, 53 F.3d 1042-43.  Moreover, an ALJ may reject the testimony of an examining, but nontreating physician, in favor of a nonexamining, nontreating physician only when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence.  *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995).

Dr. Cools testified as a medical expert at the administrative hearing.  Tr. 38-48.  The record reflects that Plaintiff had serious problems with alcohol and drug dependence,[1] which he had not always accurately disclosed to medical providers.  Tr. 20.  Dr. Cools testified that when Plaintiff began the recovery process at the substance abuse center in 2011, his health status improved dramatically.  Tr. 42.  Plaintiff became more active; regained stress management skills; and was once

---

[1]On November 18, 2010, Plaintiff reported his substance abuse began as early as age 12 for drugs (marijuana and methamphetamine) and prior to age 16 for alcohol.  Tr. 325.

ORDER GRANTING DEFENDANT'S MOTION . . . - 9

again enjoying spending time with his son, being active on his dirt bike, visiting his family and going to self-help groups. Tr. 42. Dr. Cools noted that when Plaintiff was off alcohol and drugs, Plaintiff's mental status improved with very little medication. Tr. 45-46. Dr. Cools further indicated Plaintiff did not have relationship problems other than those generated by his usage of drugs and alcohol. Tr. 47. Dr. Cools testified that absent the impact of the alcohol and drug abuse, Plaintiff was doing reasonably well. Dr. Cools specifically opined that, absent the impact of drugs and alcohol, Plaintiff's restrictions of activities of daily living would be mild, restrictions of social functioning would be moderate, difficulties maintaining concentration, persistence and pace would be mild, and there would be no episodes of decompensation. Tr. 46-47. The ALJ accorded Dr. Cools' opinion significant weight. Tr. 21.

As noted above, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 830. In this case, while the ALJ accorded significant weight to the testimony of the medical expert, substantial evidence in addition to Dr. Cools' testimony justifies the ALJ's rejection of those portions of medical reports which are not consistent with the ALJ's RFC determination. *See infra*.

First, the testimony of Dr. Cools is consistent with the testimony of Plaintiff's grandfather, Robert Durheim. Tr. 20. Mr. Durheim testified Plaintiff previously had issues with drugs and alcohol, but since Plaintiff entered and completed substance abuse treatment, there were no longer issues with Plaintiff's anger and frustration. Tr. 61, 63-64. Mr. Durheim indicated that Plaintiff's medication was "absolutely" working and there was "no question" that Plaintiff had made significant progress since completing treatment. Tr. 64.

The testimony of Dr. Cools is also fairly consistent with the report of examining medical professional Joyce Everhart, Ph.D. Tr. 21. The ALJ indicated

ORDER GRANTING DEFENDANT'S MOTION . . . - 10

that Dr. Everhart's opinion was accorded weight because it was well supported by her clinical findings and generally consistent with the medical record.[2]  Tr. 21.

On May 5, 2010, Dr. Everhart reported Plaintiff was able to complete his activities of daily living without assistance, was able to do his own cooking, cleaning and laundry, and could take care of his personal hygiene.  Tr. 248.  Dr. Everhart indicated Plaintiff did not present as depressed, anxious or angry and there was no indication of agitation.  Tr. 248.  Based on the mental status examination, Dr. Everhart concluded Plaintiff's attention, concentration and intellectual ability were within normal limits, there was no suggestion of difficulty with executive functioning, and Plaintiff retained the ability to listen, understand, remember and follow simple directions.  Tr. 248.  Dr. Everhart did opine that Plaintiff may have some difficulty with complex multistep tasks and was likely to do best if he did not have to interact with the public, supervisors or coworkers; however, Dr. Everhart also found that Plaintiff's persistence was good, Plaintiff remained on task, and Plaintiff did not appear easily distracted.  Tr. 248.

Plaintiff reported to Dr. Everhart that the main reason he was unable to work at any job was "[t]he repetition of doing the same thing every day.  I get bored. Then I start faking sick and end up losing my job.  It might be different if I had a job that had different tasks or was a mechanics job."  Tr. 247.  Plaintiff's report of getting bored with a job and then faking sickness and the potential that things would be different if he obtained a more interesting job conflicts with his claim of disabling limitations preventing him from working.

---

[2]Of significance, while Plaintiff reported to Dr. Everhart that his marijuana use began at age 13 to 14 and alcohol abuse began at age 17, there is no mention of Plaintiff's documented methamphetamine use in Dr. Everhart's report.  Tr. 244. Accordingly, it is apparent Dr. Everhart did not consider Plaintiff's history of methamphetamine abuse in her examination of Plaintiff.

ORDER GRANTING DEFENDANT'S MOTION . . . - 11

State agency reviewing physician, Eugene Kester, M.D., reported on June 19, 2010, that Plaintiff was able to perform simple work, work with others superficially and adjust to changes in the work place periodically, set goals independently, avoid hazards and travel.  Tr. 266.  On October 1, 2010, James Bailey, Ph.D., reviewed the record and affirmed Dr. Kester's opinion.  Tr. 268.  The ALJ gave weight to the state agency mental assessments, finding their opinions were largely consistent with the medical record.  Tr. 21.  The state agency reports are also fairly consistent with Dr. Cools' testimony.

Between February 2007 and May 2009, Plaintiff was seen five times by Bill Gibson, ARNP, Ph.D.  On May 28, 2009, Dr. Gibson wrote a letter which stated Plaintiff was unable to maintain consistent employment.  Tr. 220.  However, it is undisputed that Dr. Gibson's assessments were furnished during a period of consistent substance abuse by Plaintiff, yet Dr. Gibson never mentioned Plaintiff's drug and/or alcohol abuse in his reports.  Tr. 21-22, 214-220.  It is therefore apparent that Dr. Gibson's assessments reflect Plaintiff's condition while, apparently unbeknownst to Dr. Gibson, Plaintiff was abusing drugs and/or alcohol.  In this case, the ALJ concluded that if Plaintiff's substance use was taken into consideration, Plaintiff met Sections 12.04 and 12.09 of the listed impairments and was thus disabled.  Tr. 16.  Accordingly, the ALJ's determination is essentially consistent with Dr. Gibson's opinion in his May 28, 2009, letter.  Tr. 220.

In any event, Dr. Gibson's medical reports of record do not reflect the level of limitation he notes in the May 28, 2009, letter.  On February 16, 2007, Dr. Gibson indicated Plaintiff continued to be less irritable and had less mind racing since being medicated.  Tr. 214.  Plaintiff was diagnosed with Bipolar, NOS, and given a global assessment of functioning (GAF) score of 64, indicative of only mild symptoms or "some difficulty in social, occupational, or school functioning, but generally functioning pretty well."  *See* Diagnostic and Statistical Manual of

Mental Disorders, 32 (4th ed. 1994).[3]  On March 30, 2007, Dr. Gibson noted that Plaintiff seemed "quite stable" and gave Plaintiff a GAF score of 66.  Tr. 215.  On January 3, 2008, Plaintiff reported some mind racing and irritability; however, Dr. Gibson again assessed a GAF score of 66.  Tr. 217.  On April 29, 2009, Plaintiff reported depression and hyposomnia.  Tr. 218.  Dr. Gibson gave Plaintiff a GAF score of 55[4] on this occasion.  Tr. 218.  On May 28, 2009, Plaintiff reported he had stopped all medications.  Tr. 219.  Dr. Gibson again assessed a GAF score of 55, indicative of moderate symptoms.  Tr. 219.  Dr. Gibson's medical reports, as outlined above, do not document the "significant" barriers to employment he notes in the May 28, 2009, letter.  Moreover, as indicated by the ALJ, the five medical reports produced by Dr. Gibson fail to mention clinical findings in support of his opinions.  Tr. 22.

The ALJ gave little weight to Dr. Gibson's opinions because he did not consider the impact of Plaintiff's substance abuse and because he offered no clinical findings in support of his conclusions.  Tr. 22-23.  These are specific, legitimate reasons which are supported by the evidence of record.  The ALJ appropriately accorded "little weight" to Dr. Gibson's opinions.

James Hutchinson, M.S., under the supervision of Douglas Lane, Ph.D.,

---

[3]The GAF scale is no longer included in the fifth edition of the Diagnostic and Statistical Manual of Mental Disorders.  *See* Diagnostic and Statistical Manual of Mental Disorders, 16 (5th ed. 2013) ("It was recommended that the GAF be dropped from the DSM-5 for several reasons, including its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice.").

[4]A GAF of 60-51 reflects: Moderate symptoms or moderate difficulty in social, occupational, or school functioning.  *See* Diagnostic and Statistical Manual of Mental Disorders, 32 (4th ed. 1994).

ORDER GRANTING DEFENDANT'S MOTION . . . - 13

examined Plaintiff in March 2008.  Tr. 285-294.  In addition to Bipolar II Disorder, the medical professionals diagnosed alcohol dependence, early partial remission, and cannabis dependence, sustained full remission, and noted that alcohol use may exacerbate Plaintiff's mood and psychotic symptoms and increase his vulnerability to impulsive behavior.  Tr. 286-287.  Like the medical reports of Dr. Gibson, this assessment was furnished during a period of consistent substance abuse by Plaintiff; however, Plaintiff reported during the examination that he was not actively abusing substances.  Tr. 290-291.  It is thus apparent that the assessment reflects Plaintiff's condition while, unbeknownst to the examiners, Plaintiff was abusing drugs and/or alcohol.  Since the ALJ concluded that if Plaintiff's substance use was taken into consideration, Plaintiff met Sections 12.04 and 12.09 of the listed impairments, the Hutchinson/Lane assessment is essentially consistent with the ALJ's determination.  In addition, while the medical professionals accounted for Plaintiff's marijuana and alcohol usage, the only mention of Plaintiff's methamphetamine use is an indication that Plaintiff tried methamphetamine on a few occasions as a teenager, but did not enjoy the drug.  Tr. 291.  Accordingly, as noted by the ALJ, Tr. 22, it is apparent Plaintiff's documented history of methamphetamine abuse was not adequately considered in this examination of Plaintiff.[5]

The medical professionals filled out a psychological/psychiatric evaluation form indicating Plaintiff had marked limitations in his ability to relate appropriately to co-workers and supervisors and ability to respond appropriately to and tolerate the pressure and expectations of a normal work setting.  Tr. 287.  They

---

[5]Plaintiff informed Mr. Hutchinson/Dr. Lane that he sometimes experienced delusions of reference (television ads talk to him and describe his situation), and tactile hallucinations (bugs crawl on and penetrate his skin).  Tr. 290.  However, the report does not attribute these symptoms to Plaintiff's methamphetamine use.

further noted Plaintiff seemed to be very limited in his capacity to maintain employment at the time.  Tr. 294.  However, they estimated that the length of time Plaintiff would be impaired to this degree would only be three to nine months.  Tr. 288.  The limitations would thus not meet the duration requirements of the Social Security Act (one year).  42 U.S.C. § 1382c(a)(3)(A).  Mr. Hutchinson/Dr. Lane concluded that when Plaintiff "is able to more effectively control his mood and anger symptoms he will likely be able to engage in occupational responsibilities."  Tr. 294.

The Hutchinson/Lane report also indicated that the MMPI-2 testing suggested Plaintiff provided an invalid profile due to over-reporting or exaggeration of symptoms.  Tr. 292.  It was noted that the invalidity of the profile may have been the result of Plaintiff's level of education.  However, the results of the mini mental status exam "fell within normal limits," and it was noted that Plaintiff "exhibited grossly normal attentional and concentration abilities, and his short and long term memory appeared to be grossly intact."  Tr. 293.  Other medical reports of record also showed that Plaintiff was of average intelligence.[6] The Hutchinson/Lane report indicates it was possible Plaintiff exaggerated legitimate symptoms, yet, as noted by the ALJ, the report does not account for Plaintiff's symptom exaggeration.  Tr.  22.

The ALJ further indicated that the Hutchinson/Lane report was largely based on Plaintiff's self-report.  Tr. 22.  As stated in Section A, since Plaintiff was properly found by the ALJ to be not entirely credible, the ALJ appropriately accorded little weight to a medical report based primarily on Plaintiff's subjective complaints.  *See Tonapetyan*, 242 F.3d at 1149.

_____

[6]Dr. Greene indicated that "[Plaintiff's] nonverbal reasoning abilities and his verbal comprehension skills are comparable.  [Plaintiff's] abilities across all domains are comparable to those of his peers."  Tr. 303, 325.

ORDER GRANTING DEFENDANT'S MOTION . . . - 15

The ALJ indicated Mr. Hutchinson/Dr. Lane did not adequately address the role of substance abuse, their opinion was largely based on Plaintiff's self-report, they did not consider Plaintiff's history of methamphetamine abuse, and Plaintiff's score on the MMPI-2 was invalid due to over-reporting or exaggeration of symptoms, but Mr. Hutchinson/Dr. Lane did not address how the invalid MMPI-2 score affected the limitations they assessed. Tr. 22. These are specific, legitimate reasons which are supported by the evidence of record. The ALJ appropriately accorded "little weight" to the Hutchinson/Lane report.

The record reflects three examinations of Plaintiff by William Greene, Ph.D. Tr. 295, 308, 323. On November 25, 2008, Plaintiff was examined by Kathy Jamieson-Turner, M.S., under the supervision of Dr. Greene. Tr. 295-307. No cognitive limitations and only moderate social limitations were noted. Tr. 297. Plaintiff's performance on the Personality Assessment Inventory (PAI) indicated considerable distortion and resulted in an inaccurate reflection of Plaintiff's objective clinical status. Tr. 305-306. In fact, Plaintiff's grandfather reviewed the results of the PAI during the examination and mentioned that Plaintiff's responses had not been accurate. Tr. 306.

On June 8, 2010, Dr. Greene indicated Plaintiff had a marked limitation in his ability to relate appropriately to co-workers and supervisors, but was otherwise only mildly or moderately limited. Tr. 311. Nevertheless, Dr. Greene estimated that the length of time Plaintiff would be impaired to this degree would only be six to nine months. Tr. 312. The limitations assessed by Dr. Greene on June 8, 2010, would thus not meet the duration requirements of the Social Security Act (one year). 42 U.S.C. § 1382c(a)(3)(A). Dr. Greene opined that if Plaintiff participated in structured counseling and alcohol and drug treatment there was a possibility Plaintiff could improve his lifestyle and become a productive individual. Tr. 313. Dr. Greene's theory in this regard has been proven accurate. As noted above, Dr. Cools testified that when Plaintiff began the recovery process at the substance

ORDER GRANTING DEFENDANT'S MOTION . . . - 16

abuse center in 2011, Plaintiff's health status improved dramatically.  Tr. 42.

Plaintiff's grandfather echoed Dr. Cools' testimony in this regard.  Tr. 63-64.

On November 18, 2010, Dr. Greene examined Plaintiff for a third time.  Tr. 323-338.  Dr. Greene indicated that "[f]or the first time today" Plaintiff admitted he had abused methamphetamine.  Tr. 325, 327.  It was noted that Plaintiff was currently attending inpatient alcohol/drug treatment and had completed 30 days of the program.  Tr. 325, 327.  Dr. Greene indicated the mood swings described by Plaintiff "are among similar symptoms to those of withdrawal from Methamphetamine, which can last for at least 2 years since last use, which in this case was [reportedly] in March 2010."  Tr. 327.  Dr. Greene also noted that Plaintiff's methamphetamine abuse began at the same time he was first diagnosed with Bipolar Disorder.  Tr. 327.  Dr. Greene reiterated that if Plaintiff participated in structured counseling and alcohol and drug treatment there was a possibility Plaintiff could improve his lifestyle and become a productive individual.  Tr. 327.  Again, it is confirmed by the testimony of Dr. Cools and Plaintiff's grandfather that Plaintiff did improve after completing treatment.

Dr. Greene noted on this occasion that the MMPI and PAI test scores were invalid and indicated the reason for Plaintiff's inability to produce valid MMPI's or PAI's was not his lack of verbal skills.  Tr. 324.  Dr. Greene still opined that Plaintiff had moderate cognitive and social limitations.  Tr. 325-326.  Nevertheless, Dr. Greene estimated that the length of time Plaintiff would be impaired to the degree he assessed on November 18, 2010, would only be six months.  Tr. 326.

As held by the ALJ, it is apparent Dr. Greene's early examinations did not adequately consider Plaintiff's substance abuse problems; specifically, the effects of Plaintiff's methamphetamine abuse.  Tr. 23.  It was not until his final examination with Dr. Greene that Plaintiff admitted "[f]or the first time" that he had abused methamphetamine.  Tr. 325, 327.  At that time, Dr. Greene indicated Plaintiff's methamphetamine abuse reportedly began at the same time he was first

ORDER GRANTING DEFENDANT'S MOTION . . . - 17

diagnosed with Bipolar Disorder and that the mood swings described by Plaintiff "are among similar symptoms to those of withdrawal from Methamphetamine." Tr. 327. Consistent with the ALJ's finding, Tr. 23, Dr. Greene's November 18, 2010 report specifies that his first two examinations did not consider the true impact of Plaintiff's substance abuse issues.

During the final examination, Plaintiff's MMPI and PAI test scores were deemed invalid, Tr. 324, yet Dr. Greene did not address the effects of possible symptom exaggeration on his opined limitations. The ALJ also appropriately considered this factor when assessing Dr. Greene's medical reports. Tr. 23.

In any event, at the final examination, Plaintiff was in the process of participating in substance abuse treatment, and Dr. Greene estimated that the length of time Plaintiff would be impaired to the degree he assessed would only be six months. *See* 42 U.S.C. § 1382c(a)(3)(A). Dr. Greene opined that if Plaintiff participated in structured counseling and alcohol and drug treatment there was a possibility Plaintiff could improve his lifestyle and become a productive individual. Tr. 327. As noted above, this opinion was proven accurate as both Plaintiff's grandfather and Dr. Cools testified that Plaintiff's health status improved dramatically after completing substance abuse treatment in 2011. Tr. 42, 63-64.

The ALJ gave Dr. Greene's opinions some, but not great, weight. Tr. 23. The ALJ indicated she only accorded his opinions some weight because Dr. Greene's November 2008 and June 2010 opinions did not adequately consider the effects of methamphetamine abuse and Dr. Greene's November 2010 did not adequately consider the effects of possible symptom exaggeration on the opined limitations. Tr. 23. These are specific, legitimate reasons which are supported by the evidence of record.

It is the responsibility of the ALJ to determine credibility, resolve conflicts in medical testimony and resolve ambiguities. *Saelee v. Chater*, 94 F.3d 520, 522

(9th Cir. 1996).  The Court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon de novo review.  42 U.S.C. § 405(g).  Where, as here, the ALJ has made specific findings justifying a decision, and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision.  *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).  Based on the foregoing, the ALJ did not err by rejecting those portions of medical reports which are not consistent with the ALJ's RFC determination and for according weight to the opinion of the medical expert, Dr. Cools.  The ALJ's rationale is supported by substantial record evidence.  *Roberts*, 66 F.3d at 184.  The substantial weight of the record evidence supports the ALJ's determination in this case.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and is not based on legal error.  Accordingly,

**IT IS ORDERED:**

1.    Defendant's Motion for Summary Judgment, **ECF No. 17**, is **GRANTED**.

2.    Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant.  Judgment shall be entered for **DEFENDANT** and the file shall be **CLOSED**.

DATED November 14, 2013.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE